UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT PIERCE DIVISION

SIDNEY SWARTZ, M.D.,

    Plaintiff,

v.                                                           Case No. 21-cv-14137-AMC

INTERVENTIONAL REHABILITATION
OF SOUTH FLORIDA, INC.,

    Defendant.
_____/

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1, Defendant Interventional Rehabilitation of South Florida, Inc. ("IRSF"), moves for summary judgment against Plaintiff Sidney Swartz ("Dr. Swartz"). The grounds upon which this Motion is based are set forth in the following Supporting Memorandum of Law.

## MEMORANDUM OF LAW

### I.     SUMMARY OF THE ARGUMENT

Dr. Swartz's claims under the False Claims Act and Florida Private Whistleblower Act for unlawful retaliation fail because (1) Dr. Swartz voluntarily resigned his employment in lieu of termination; (2) Dr. Swartz had not engaged in any protected activity at the time the decision to terminate his employment was made; (3) Dr. Swartz never complained of any FCA violations, and did not otherwise engage in protected activity; (4) Dr. Swartz cannot prove a causal connection between his alleged protected activity and any adverse employment action; and (5) IRSF had legitimate and non-retaliatory reasons to terminate Dr. Swartz's employment, and those reasons were not pretext for retaliation.

1

IRSF decided to terminate Dr. Swartz's employment after he engaged in workplace misconduct for nearly a year and repeatedly violated IRSF's company policies. No other IRSF employees engaged in the same level of workplace misconduct. However, conveniently, the day after IRSF decided to terminate Dr. Swartz's employment, Dr. Swartz sent a series of emails raising concerns about IRSF's policies and whether other doctors and Medical Assistants ("MAs") were compliant with those policies. Dr. Swartz claims these emails constitute protected activity, but they do not. As part of his duties, Dr. Swartz was tasked with reporting compliance concerns, and therefore reporting those concerns was not protected activity under the "Manager's Rule." Moreover, Swartz admits that the alleged conduct violated company policy. Furthermore, Swartz did not allege that IRSF made any disclosures in connection with an FCA violation.

Ultimately, Dr. Swartz voluntarily resigned his employment before IRSF could terminate him. Dr. Swartz has subsequently informed other physicians and prospective employers that he voluntarily resigned. Based on these facts, Dr. Swartz's retaliation claims fail.

## II.   ARGUMENT

### A.   Summary Judgment Standard

One of the primary purposes of summary judgment is to isolate and dispose of factually unsupported claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). To that end, the United States Supreme Court has held that the plain language of Rule 56(c) of the Federal Rules of Civil Procedure:

> [M]andates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no "genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Id.* at 322-23.

The party opposing summary judgment may not simply rest upon mere allegations or denials, but must make a sufficient showing to establish the existence of an essential element to the party's case, and on which the party will bear the burden of proof at trial. *Celotex Corp.,* 477 U.S. at 323-24; *Barfield v. Brierton,* 883 F.2d 923, 933 (11th Cir. 1989). If the nonmovant "fails to adduce evidence which would be sufficient, when viewed in a light most favorable to the nonmovant, to support a jury finding for the nonmovant, summary judgment may be granted." *See Burger King Corp. v. Barnes,* 1 F. Supp. 2d 1367 (S.D. Fla. 1998) (*citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 254-55 (1986)).

The burden on the nonmoving party is substantial; a mere scintilla of evidence is insufficient to defeat a motion for summary judgment. *Id.* at *252. "A fact [or issue] is material for the purposes of summary judgment only if it might affect the outcome of the suit under the governing law." *Kerr v. McDonald's Corp.*, 427 F.3d 947, 951 (11th Cir. 2005) (internal quotations omitted). "Furthermore, '[a]n issue [of material fact] is not 'genuine' if it is unsupported by the evidence or is created by evidence that is 'merely colorable' or 'not significantly probative.'" *Golden v. Univ. of Miami*, 484 F. Supp. 1255, 1261 (S.D. Fla. 2020) (original alterations) (quoting *Flamingo S. Beach I Condo. Ass'n, Inc. v. Selective Ins. Co. of Southeast*, 492 Fed. Appx. 16, 26 (11th Cir. 2013). Instead, "'[t]here must be evidence from which a jury could reasonably find for the non-moving party.'" *Id*.

  **B.** **IRSF Is Entitled To Summary Judgment On All Of Dr. Swartz's Retaliation Claims Because Dr. Swartz Voluntarily Resigned**

To sustain his retaliation claims under the False Claims Act ("FCA") and the Florida Private-Sector Whistleblower Protection Act ("FWA"), Dr. Swartz alleges that IRSF unlawfully took retaliatory action against him by terminating his employment. But IRSF did not terminate

his employment. Dr. Swartz voluntarily resigned, and IRSF is therefore entitled to summary judgment on that ground alone.

The FCA "protects employees that have been 'discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee." *Farnsworth v. HCA, Inc.*, CASE NO.: 8:15-cv-65-T-24-MAP, at *5 (M.D. Fla. Sep. 8, 2015) (citing 31 U.S.C. § 3760(h)(1)). Similarly, the FWA protects against the "discharge, suspension or demotion by an employer of an employee or *any other adverse employment action* taken by an employer against an employee in the terms and conditions of employment." *Padron v. Bellsouth Telecommunications, Inc.*, 196 F. Supp. 2d 1250, 1259 (S.D. Fla. 2001).

Here, IRSF did not discharge, demote, suspend, or engage in any adverse employment actions against Dr. Swartz – instead, Dr. Swartz *voluntarily* resigned. It is true that IRSF decided to terminate Dr. Swartz prior to Dr. Swartz's resignation, but that termination would not have taken effect for 90 days per the terms of Dr. Swartz's contract. Moreover, before Ms. Hopf and Mr. Wilson could fully communicate the termination and complete the meeting, Dr. Swartz voluntarily resigned. Dr. Swartz's resignation was voluntary and not in response to any coercion, duress, deception, or misrepresentation by IRSF. *See Hargray v. City of Hallandale*, 57 F.3d 1560, 1568 (11th Cir. 1995) ("resignations can be voluntary even where the only alternative to resignation is facing possible termination for cause or criminal charges").[1] Notably, Dr. Swartz was not faced

---

[1] *See also Santandreu v. Miami-Dade Cty.*, No. 10-24616-CIV-ALTONAGA/Simonton, 2011 WL 13136161, at *11 (S.D. Fla. Aug. 1, 2011) ("Employee resignations are presumed to be voluntary . . . A resignation is involuntary in two situations: (1) where the employer forces the resignation by coercion or duress; or (2) where the employer obtains the resignation by deceiving or misrepresenting a material fact to the employee."); *Anderson v. Bellsouth Telecommunications, LLC*, No. 2:12-CV-03537-RDP, 2015 WL 461698, at *15 (N.D. Ala. Feb. 4, 2015) (finding voluntary resignation where plaintiff's choice was between the lesser of two unpleasant outcomes).

with a termination for cause, but rather was only facing a termination without cause effective 90 days after the meeting. In deposition, Dr. Swartz explained that he made the choice to resign, received payment according to his contract following his resignation, and has subsequently described the end of his employment with IRSF as a resignation when discussing the issue with other physicians and prospective employers. Thus, it is undisputed that Dr. Swartz voluntarily resigned and he has no basis for either of his retaliation claims.

      **C.**     **Dr. Swartz had not engaged in protected activity at the time the termination decision was made**

Even if Dr. Swartz could establish that he suffered an adverse action, which IRSF disputes, his claim still fails because he had not engaged in protected activity at the time the termination decision was made. *See Benefield v. Fulton Co., Ga.*, 130 Fed. Appx. 308, 2005 WL 1006847 at *5 (11th Cir. 2005) ("[a]t a minimum … a plaintiff must establish that the employer was actually aware of the protected expression at the time it took adverse employment action"); *Brungart v. Bellsouth Telecommunications, Inc.*, 231 F.3d 791, 799 (11th Cir. 2000), cert. denied, 532 U.S. 1037, 121 S. Ct. 1998, 149 L. Ed. 2d 1001 (2001) ("[a] decision maker cannot have been motivated to retaliate by something unknown to him"). The undisputed facts show that IRSF made the decision to terminate Dr. Swartz *prior* to his August 2019 complaints which he claims constitutes his protected activity in this matter.[2]

"[W]hen an employer contemplates an adverse employment action *before* an employee engages in protected activity, temporal proximity between the protected activity and the

---

[2] Dr. Swartz also attempts to claim that the October 2018 emails regarding the role of scripts and MA's constituted protected activity, but he eventually admits that those emails were just seeking clarification and that he did not actually report or object to any alleged unlawful practices at that time. In fact, the emails and Dr. Swartz's testimony reflect that Dr. Swartz was attempting to expand, or relax the Company's policies so that scribes and MA's could perform additional duties beyond what the Company then allowed. The Company did, in fact, relax its policies in response to Dr. Swartz's October 2018 emails.

subsequent adverse employment action does not suffice to show causation." *Juback v. Michaels Stores, Inc.*, 143 F.Supp.3d 1195 (M.D. Fla. Nov. 10, 2015) (*citing Drago v. Jenne*, 453 F.3d 1301, 1308 (11th Cir.2006)) (emphasis added).  A plaintiff cannot establish a causal link between his termination and protected activity where the grounds for termination and his superior's dissatisfaction with the plaintiff predated the plaintiff's protected activity.  *Pipkins v. City of Temple Terrace*, 267 F.3d 1197, 1201 (11th Cir. 2001) (no causal nexus where protected activity occurred only after the commencement of adverse employment actions); *see Schechter v. Ga. State Univ.*, 341 Fed. Appx. 560, 563 (11th Cir. 2009) (summary judgment affirmed on retaliation claim where plaintiff could not establish causation, since negative evaluations of job performance predated protected activity).

Here, in and around November 2018, IRSF considered terminating Dr. Swartz's employment and prepared a written disciplinary letter documenting his misconduct.  Ultimately, IRSF did not move forward with either action, but HR advised Dr. Swartz to follow company policy.  Further, it is undisputed that Hopf and Bollimpalli met and made the decision to terminate Swartz *before* Swartz engaged in his alleged protected activity in August 2019.  Specifically, Hopf and Bollimpalli met on August 15, 2019, and Swartz coincidentally began sending his complaint emails on August 16, 2019.  Accordingly, there can be no causal link between the emails beginning on August 16, 2019 (i.e. alleged protected activity) and his termination (i.e. adverse employment action).  *See Castillo v. Roche Labs, Inc.*, 467 Fed. Appx. 859 (11th Cir. 2012) (plaintiff could not establish *prima facie* case of retaliation because he failed to present sufficient evidence of causation because he did not "challenge the district court's finding that his complaint of discrimination post-dated [the employer's] initial contemplation of his termination").

      **D.**     **IRSF Is Entitled To Summary Judgment On Dr. Swartz's Federal False Claims Act Retaliation Claim**

The False Claims Act, 31 U.S. Code § 3729, applies only to claims against entities receiving federal funds, and the FCA retaliation provision applies only to protected activity in connection with an FCA violation. *See, e.g., Hickman v. Spirit of Athens, Ala., Inc.*, 985 F.3d 1284, 1285 (11th Cir. 2021) (finding that plaintiffs failed to demonstrate protected activity under FCA because there was no evidence defendant submitted a false claim to obtain federal funds); *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1052 (11th Cir. 2015) ("Indeed, the central question regarding whether a relator's allegations state a claim is, did the defendant present (or caused to be presented) to the government a false or fraudulent claim for payment?"). The 11th Circuit has explained:

> [L]iability under the Act arises from the submission of a fraudulent claim to the government, not the disregard of government regulations or failure to maintain proper internal procedures.
>
> That requirement matters. An organization might commit, and its employees might believe it has committed, any number of legal or ethical violations—but the Act's retaliation provision only protects employees where the suspected misdeeds are a violation of the False Claims Act, not just of general principles of ethics and fair dealing. It is not enough for an employee to suspect fraud; it is not even enough to suspect misuse of federal funds. In order to file under the False Claims Act, whether in a qui tam or a retaliation action, an employee must suspect that her employer has made a false claim to the federal government.

*Hickman*, 985 F.3d at 1289 (internal citations omitted).[3] Additionally, employees with compliance responsibilities "must do more than merely grumble . . . about job dissatisfaction or regulatory violations or report mischarging the government to a supervisor." *Lord v. Univ. of Miami*, 13-

---

[3] The *Hickman* court did not interpret whether the "distinct possibility" or "objective reasonableness test" applies because the plaintiffs lacked any reason to believe that their employer had filed a false claim against the government and this fact alone was dispositive. The same is true here.

22500-CIV-ALTONAGA/McAliley, at *1 (S.D. Fla. Nov. 16, 2021)(internal citations omitted); *see also Hickman*, 985 F.3d at 1289 ("general allegations of fraud are not enough").

In the present case, the evidence reflects that Dr. Swartz merely grumbled about potential compliance concerns. He has not alleged that anyone at IRSF made any disclosures in connection with an FCA violation—that is, a fraudulent request for payment from the federal government. In fact, Dr. Swartz admits that he was not aware of any instances where an exam was filled out and submitted that had not been performed. On this ground alone, summary judgment should be granted in IRSF's favor on this claim.

On the merits, Dr. Swartz's FCA retaliation claim also fails. "The burden shifting framework for FCA retaliation claims is similar to the Title VII framework of *McDonnell Douglas Corp. v. Green*, except that the FCA has an additional element: the employer must be covered by the FCA." *See Mann v. Olsten Certified Healthcare Corp.*, 49 F. Supp.2d 1307, 1316-17 (M.D. Ala. 1999); *see also Nesbitt v. Candler Cnty.*, 945 F.3d 1355, 1360 (11th Cir. 2020) (applying but-for causation to FCA cases just as under Title VII). For the reasons discussed below, Dr. Swartz's retaliation claims fail.[4]

---

[4] "The Eleventh Circuit has not expressly applied *McDonnell Douglas* to FCA retaliation claims. Other circuits have. *See, e.g., Harrington v. Aggregate Indus. Ne. Region, Inc.*, 668 F.3d 25, 30-31 (1st Cir. 2012) (stating that '[t]he McDonnell Douglas approach fits comfortably with the test that courts generally apply to retaliation claims under section 3730(h)(1)'); *U. S. ex rel. Schweizer v. Oce N.V.*, 677 F.3d 1228, 1241, 400 U.S. App. D.C. 284 (D.C. Cir. 2012) (adopting burden shifting framework as a "useful screening device in the summary judgment milieu"). District courts in this Circuit also have applied this modified framework to FCA retaliation claims. *See, e.g., United States ex rel. Heesch v. Diagnostic Physicians Group, P.C*., 2014 U.S. Dist. LEXIS 113020, at *19-20 (S.D. Ala. Aug. 5, 2014); *Hale v. Moreland Altobelli Assocs.*, 2014 U.S. Dist. LEXIS 189276, at *10, n. 2 (N.D. Ga. Sep. 4, 2014). The retaliation analysis of Dr. Swartz's whistleblower claims applies to his FCA claim.

### E.    **IRSF Is Entitled To Summary Judgment On Dr. Swartz's Whistleblower Act Retaliation Claim**

Retaliation claims under the Florida Private Whistleblower Act ("FWA") are guided by the same analysis as a Title VII federal claim. *See Rutledge v. SunTrust Bank*, 262 Fed. Appx. 956, 958 (11th Cir. 2008). Accordingly, Dr. Swartz must establish a *prima facie* case under the FWA by demonstrating: (1) he engaged in statutorily protected expression; (2) he suffered an adverse employment action; (3) the adverse employment action was causally linked to the protected activity. *Graddy v. Wal-Mart Stores East, LP*, 237 F.Supp. 3d 1223, 1226 (M.D. Fla. Feb. 14, 2017) *(citing Kearns v. Farmer Acquisition Co.,* 157 So.3d 458, 462 (Fla. 2d DCA 2015)).

The burden then switches to the defendant to offer a legitimate reason for the adverse action. If the defendant can do so, the plaintiff then must prove that the proffered reason is "mere pretext" for prohibited, retaliatory conduct. *See Olmsted v. Taco Bell Corp*., 141 F.3d 1457, 1460 (11th Cir. 1998); *see also McDonnell Douglas*, *supra.*

Dr. Swartz's whistleblower claims fail as a matter of law because he cannot establish a *prima facie* case of retaliation. Even if he could, he cannot demonstrate that IRSF's legitimate reasons for any alleged adverse action were pretextual.

### 1.    **Dr. Swartz did not complain about a violation of laws, rules, or regulations.**

Under the FWA, an employer is prohibited from taking retaliatory action against an employee who has "[o]bjected to, or refused to participate in, any activity, policy, or practice of the employer which is in violation of a law, rule, or regulation." Section 448.101(4), *Florida Statutes,* specifically defines a "law, rule, or regulation" as "any statute or ordinance applicable to the employer and pertaining to business." § 448.101(4), *Fla. Stat.*

When a plaintiff's claim does not concern a violation of a law, rule, or regulation, but rather a violation of company policy, it does not fall within the coverage of the FWA. *See Lawson v.*

9

*Dollar Gen. Corp.*, 2006 U.S. Dist. LEXIS 47082 (M.D. Fla. July 12, 2006). Accordingly, an employee's complaint about a violation of *company policy* does *not* constitute protected activity under the FWA. *See New World Communications of Tampa, Inc. v. Akre*, 866 So.2d 1231, 1234 (Fla. 2d DCA 2003) (FCC's policy against the intentional falsification of the news did not qualify as the required "law, rule, or regulation" under § 448.102), *clarified on other grounds*, 866 So.2d 1231 (Fla. 2d DCA 2004), *reh'g denied*, 2004 Fla. LEXIS 462 (Fla. Feb. 27, 2004); *Morin v. Day & Zimmermann NPS, Inc.,* 2008 WL 2543432 at *5-7 (S.D. Fla. June 25, 2008) (procedure developed by company was not a law, rule or regulation); *Little v. Foster Wheeler Constr., Inc.,* 2010 WL 2035546, at *9 (S.D. Fla. May 24, 2010) (employer's policies and procedures were not within the scope of protections provided by FWA), *aff'd* 432 Fed. Appx. 907 (11th Cir. 2011).

Dr. Swartz did not engage in protected activity because he did not complain about a violation of law, rules, or regulations. Dr. Swartz's emails in October 2018 about the scribing policy and the duties of medical assistants were an attempt to clarify the company policy – not a complaint or protected activity. At the time, Dr. Swartz believed IRSF's policies were overbroad and too restrictive, and as a result of his October 2018 inquiry, the company adjusted its policy on November 30, 2018. Dr. Swartz also admits that in October 2018 he did have evidence to make any specific complaints about Dr. Levine, Dr. Alvarez, or any doctors.

Starting on August 16, 2019 – the day after Denice Hopf and Dr. Bollimpalli made the decision to terminate Dr. Swartz's employment – Dr. Swartz made inquiries about the company's scribing policy. His August 2019 emails state that he did not understand or know the company policies, and his desire for all physicians and medical assistants to be compliant with company policy. Accordingly, Dr. Swartz cannot demonstrate that he engaged in protected activity and cannot establish a *prima facie* case. *See Lawson v. Dollar Gen. Corp*., 2006 U.S. Dist. LEXIS

10

47082, at *8 (M.D. Fla. July 12, 2006) (granting summary judgment because claims of violation of company policies do not meet the definition of "law, rule, or regulation" under the FWA).

    **2.**    **Dr. Swartz cannot establish that any alleged violations were committed by "the employer."**

Section 448.102(3), *Florida Statutes*, prohibits an employer from taking retaliatory personnel action against an employee who "[o]bjected to, or refused to participate in, any activity, policy, or practice *of the employer* which is in violation of a law, rule, or regulation." (Emphasis supplied). A violation of law by an employee, as opposed to a defendant employer, cannot support a claim based on the FWA unless the illegal conduct was ratified by the employer. *See McIntyre v. Delhaize Am., Inc.*, 403 Fed. Appx. 448, 450 (11th Cir. 2010); *Sussan v. Nova Southeastern Univ.*, 723 So.2d 933 (Fla. 4th DCA 1999).

Here, any inappropriate use of medical assistants as scribes complained of by Dr. Swartz was *not* an illegal activity, policy or practice of IRSF. Instead, inappropriate use of medical assistants was contrary to IRSF's company policies, which were clarified in November 2018. Furthermore, IRSF provided compliance training and had discussions about medical assistants' responsibilities and scribing duties. Accordingly, any misuse of medical assistants was not *pursuant* to IRSF's policies.

Moreover, in order for an employer to be held liable, "the conduct must in some way further the interests of the employer or be motivated by those interests." *Bennett v. Godfather's Pizza, Inc.*, 570 So.2d 1351 (Fla. 3d DCA 1990). Any alleged actions by an individual taken in contravention of IRSF's policies cannot have been motivated by a desire to further the company's interests. *See Morera v. Sears Roebuck and Co.*, 652 Fed. Appx. 799 (11th Cir. 2016) (affirming summary judgment in favor of the employer because the conduct of its employee was "not something [his] employment contemplated"); *LaRoche v. Denny's Inc.*, 62 F.Supp.2d 1366 (S.D.

Fla. July 23, 1999) (employee was acting outside out of the scope of his employment because his action violated explicit company policies).[5]

Accordingly, because Dr. Swartz did not complain about unlawful acts by his employer, but rather about actions by individual employees (e.g. Dr. Levine, Dr. Alvarez, or medical assistants) allegedly undertaken in contravention of company policy, he cannot establish that he engaged in protected activity within the meaning of the FWA.

### 3. The "Manager Rule" precludes Dr. Swartz's complaints from constituting protected activity.

The "Manager Rule" originated in *McKenzie v. Renberg's, Inc.,* 94 F.3d 1478 (10th Cir. 1996). It provides that a management employee does not engage in protected activity for purposes of a retaliation claim unless he steps outside his normal job duties to take action adverse to his employer. *Id.* at 1486-87 (rejecting retaliation claim of a personnel director who reported wage and hour violations to management; the report was part of her job to alert the employer to possible violations and liability).

The Manager Rule was adopted by the Eleventh Circuit in *Brush v. Sears Holding Corp.,* 466 Fed. Appx. 781 (11th Cir. 2012). *See also Hagan v. Echostar Satellite, L.L.C.*, 529 F.3d 617, 627-28 (5th Cir. 2008) (affirming district court's grant of judgment as a matter of law based on the manager rule and reasoning that if an employee were not required to "step outside the role" to engage in statutorily protected conduct "nearly every activity in the normal course of a manager's job would potentially be protected activity," and "[a]n otherwise typical at-will employment relationship could quickly degrade into a litigation minefield, with whole groups of employees—

---

[5] *See also Bostain v. Westgate Lakes LLC*, 2011 U.S. Dist. LEXIS 65184 (M.D. Fla. June 14, 2011); *Ruiz v. Aerorep Grp. Corp.*, 941 So.2d 505, 507 (Fla. 3d DCA 2006) (dismissing plaintiff's FWA claim after concluding that the employer was not responsible for a tort of an employee where the tort was not committed with the purpose of benefitting the interests of the employer).

management employees, human resources employees, and legal employees, to name a few—being difficult to discharge without fear of a lawsuit").

The Manager Rule has been applied to FWA claims by federal courts sitting in Florida. *See, e.g. Wolf v. Pacific Natl Bank,* 2010 WL 5888778, at *10 (S.D. Fla. Dec. 28, 2010) ("[i]t is well established in [whistleblower] cases that a plaintiff does not engage in protected activity by disclosing violations of law as part of his job responsibilities"); *Goodwin v. Dyncorp Int'l LLC*, 2015 WL 12672085, (N.D. Fla. Mar. 30, 2015) (granting summary judgment on FWA claim based on the Manager Rule).

Here, the record is undisputed that Dr. Swartz was performing his required job duties when he raised concerns about suspected compliance violations. Dr. Swartz admitted in deposition that his job duties included reporting suspected compliance violations. *See Goodwin*, 2015 WL 12672085 at *5 ("[b]ecause his own testimony makes clear that he was 'doing his job[,]' . . . he was not engaged in a statutorily protected activity"). Dr. Swartz therefore did not "cross the line from being an employee 'performing [his] job . . . to an employee lodging a personal complaint.'" *Brush,* 466 Fed. Appx. at 787 (*quoting McKenzie v. Renberg's Inc.,* 94 F.3d at 1486). Therefore, under the Manager Rule, Dr. Swartz cannot establish that he engaged in statutorily protected activity.

### 4. **Dr. Swartz cannot establish a causal connection to support his FCA or FWA retaliation claims.**

Even *assuming arguendo* that Dr. Swartz engaged in protected activity – which IRSF denies – he cannot establish a causal connection between his alleged protected activity and an adverse employment action. *See O'Neill v. St. Johns River Water Mgmt. Dist.*, 341 F. Supp. 3d

1292, 1303 (M.D. Fla 2018) (applying "but-for" causation standard to claims under the FWA); *Nesbitt v. Candler Cnty.*, *supra.*

First, Dr. Swartz voluntarily resigned so he did not suffer an adverse employment action. Nevertheless, even assuming that IRSF's decision to terminate his employment constitutes an adverse employment action, Dr. Swartz cannot demonstrate that his concerns about scribing practices were the but-for cause of IRSF's decision.

There is no temporal proximity between his October 2018 emails seeking clarification on the scribing policy and the August 2019 termination decision. *See Thomas v. Cooper Lighting*, 506 F.3d 1361, 1364 (11th Cir. 2007) ("*mere* temporal proximity, without more, must be very close. . . . [a] three to four month gap is insufficiently proximate to establish causation") (internal citations omitted). Additionally, there is no evidence of a causal link between Dr. Swartz's August 2019 concerns about scribing practices and his termination – because he made the complaints *after* Dr. Bollimpolli and Denice Hopf recommended terminating his employment. *See Drago v. Jenne*, 453 F.3d 1301, 1308 (11th Cir. 2006) ("when an employer contemplates an adverse employment action before an employee engages in protected activity, temporal proximity between the protected activity and the subsequent adverse employment action does not suffice to show causation."); *see also Alvarez v. Royal Atlantic Developers, Inc.*, 610 F.3d 1253, 1270 (11th Cir. 2010) ("Title VII's anti-retaliation provisions do not allow employees who are already on thin ice to insulate themselves against termination or discipline by preemptively making a discrimination complaint"); *Abrams-Jackson v. McKeever*, No. 16-81624-CIV-MARRA, at *11 (S.D. Fla. Oct. 19, 2017) (finding no causation where investigation began prior to complaint).

Accordingly, Dr. Swartz cannot make the required causation showing and, therefore, his *prima facie* case fails.

### 5. IRSF had a legitimate, non-retaliatory reason for deciding to terminate Dr. Swartz's employment, and Dr. Swartz cannot demonstrate pretext.

If Dr. Swartz could establish a *prima facie* case under the FCA or FWA, the burden would shift to IRSF to provide a legitimate, non-retaliatory reason for the adverse action. *E.E.O.C. v. Reichhold Chemicals, Inc.*, 988 F.2d 1564, 1571-72 (11th Cir. 1993). That burden is "exceedingly light." *Meeks v. Computer Assocs., Int'l*, 15 F.3d 1013, 1019 (11th Cir. 1994). Once IRSF provides such a reason, the burden then shifts back to Dr. Swartz to prove, by a preponderance of the evidence, that IRSF's reason was false and merely pretext for retaliation. *Id.*

Pretext means more than inconsistency; it is "a lie, specifically a phony reason for some action." *Silvera v. Orange County School Bd.*, 244 F.3d 1253, 1261 (11th Cir. 2001). Dr. Swartz must establish that IRSF's reason for requesting his removal was pretext for retaliation with "significantly probative evidence." *Johnson v. Atlanta Indep. Sch. Sys.*, 137 Fed. Appx. 311, 315 (11th Cir. 2005). Dr. Swartz cannot meet his burden "by simply quarreling with the wisdom of that reason." *Chapman v. Al Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000) (*en banc*). Instead, "the inquiry into whether an employer's proffered reasons were merely pretextual centers on the employer's beliefs, not the beliefs of the employee or even objective reality." *Lopez v. AT&T Corp.*, 457 Fed. Appx. 872, 874 (11th Cir. 2012).

IRSF had legitimate and nonretaliatory reasons for deciding to terminate Dr. Swartz's employment. The record is clear that Dr. Swartz engaged in ongoing disputes with colleagues and he also had clinical issues. Dr. Swartz was repeatedly warned about that it was inappropriate and unsafe to leave signed blank prescription scripts around the office, but he continued to violate company policy.

Dr. Swartz also cannot point to any other similarly situated employee who repeatedly left blank Rx pads in violation of company policy and continually engaged in workplace squabbles with fellow employees. IRSF believes Dr. Swartz may allege that Dr. Battaglia is a comparator because of a rumor that a nurse at IRSF obtained a restraining order against Dr. Battaglia. However, this rumor is false. There is another individual with the same first and last name as Dr. Battaglia for whom Dr. Battaglia has been mistaken. No employee ever got a restraining order entered against Dr. Battaglia. Beyond this erroneous allegation, there are no facts indicating that Dr. Battaglia engaged in any workplace misconduct and no employee engaged in workplace misconduct as egregious as Dr. Swartz's behavior.

Accordingly, there is no evidence that the termination decision was based on a retaliatory animus or is pretext. In sum, IRSF had legitimate business reasons for Dr. Swartz's termination, and Dr. Swartz's cannot establish that these reasons were pretextual.

## III.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court enter an Order granting summary judgment in its favor on all counts of Dr. Swartz's Complaint.

Dated: December 22, 2021

/s/ Catherine H. Molloy
Catherine H. Molloy
Florida Bar No. 33500
Email: molloyk@gtlaw.com
Joseph H. Picone
Florida Bar No. 118381
Email: piconej@gtlaw.com
**GREENBERG TRAURIG, P.A.**
101 E. Kennedy Boulevard Ste. 1900
Tampa, Florida 33602
(813) 318-5700 – Telephone
(813) 318-5900 – Facsimile
*Attorneys for Defendant*

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on December 22, 2021, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to:

Steven G. Wenzel
**Wenzel Fenton Cabassa P.A.**
1110 N. Florida Avenue, Suite 300
Tampa, Florida 33602
E-mail: swenzel@wfclaw.com; rcooke@wfclaw.com

/s/ *Catherine H. Molloy*
Attorney